WEBB, JUDGE:
Claimant, Anna Elizabeth Mount, brought this action for damage sustained to a bam on her real property from a landslide which she alleges was the result of negligent maintenance of a ditch on the gravel road portion of County Route 7, in *141 Lesage. County Route 7 is a road maintained by respondent in Cabell County. The Court is of the opinion to make a partial award in this claim for the reasons more fully stated below.
Claimant has resided on a portion of the property located adjacent to County Route 7 in Lesage, Cabell County since 1945. In 1972, claimant and her husband, now deceased, purchased property across the road from their residence. During the summer and fall of 1983, claimant’s sons, Clyde Edward and Clarence Ray Mount, erected a bam on this particular tract, adjacent to a steep slope. County Route 7, a dirt and gravel road at this location, is at the top of this slope and there is a hillside above the road. A driveway from the road to the bam was already in place at the time the bam was built, because there had been a residence there previously. The front of the bam faces west toward the driveway; one side of the bam faces north toward the slope on County Route 7; the other side of the bam faces south toward Nine Mile Creek which is below the bam; and the back of the bam faces the east toward vacant land. According to claimant and her sons, the only excavation done to the original property while constructing the bam consisted of digging the footer which was filled with steel reinforced concrete. The foundation of the bam was built with concrete blocks that were six to ten inches thick and sixteen to eighteen inches wide. Reinforced steel was also placed in the concrete floor. The wooden, two story bam, with a tin roof, is twenty feet long, thirty feet wide and sixteen feet high. At the front of the bam, there is a large sliding door which is wide enough for a regular size pick up track to pass through. The inside of the bam is wired for electricity, but does not have indoor plumbing. The loft is used for storing hay, and the bottom is used for processing tobacco and storing equipment. Around the outside of the bam, there are gutters with a down spout. Prior to the problems with the slip, claimant’s sons were able to mow the land between the north side of the bam and the slope to County Route 7.
Claimant asserts that she had not experienced any problems at the location of her bam until 1994. In 1994, employees of respondent, using a grader, cut a ditch along County Route 7. According to claimant as well as her neighbors, Luther H. Ramey, Jr., and Lowell Elmer Gibson, this area of the ditch filled with water which was allowed to remain standing in the upper side of the road. There was no culvert along the county road to provide proper drainage. In November 1994, a slip began on C ounty Route 7. T he s lip w as e ighteen tot wenty f eet de ep a nd t welve f eet lengthwise, almost encompassing the entire road. Eventually the slip affected the foundation of claimant’s bam. From January 11, 1995 to June 5, 1995, claimant contacted respondent regarding the problem at least sixteen times. Respondent came to the site several times to place tons of slag in the sunken part of the road at the *142 slip.[1] These corrective measures did not prove to be a permanent solution to the problem, and in September to Octoberl995 respondent installed piling at the site which corrected the slip in the road.[2] The claimant has had no further problems with this slip. Her bam appears to be in a stable position as of the dates of the hearing in this claim, September 29 and 30, 1999, but damages to the bam occurred during 1994 through 1995.
The slip that occurred beginning in 1994 and continuing intol995 on County Route 7 caused claimant’s bam to shift about eighteen inches from its foundation and to move eight to ten inches off plumb. The area most affected was the northeast comer of the bam. This foundation was damaged extensively. The concrete floor of the bam remained intact, but the foundation block on which the bam was constructed overturned. This situation has made the bam unsafe for its intended purposes. According to claimant’s expert in the cost and repair of damages to the bam, Bill Tassen, the bam will have to be moved forty feet to the west to avoid the slip area. A new foundation of fill dirt and concrete will be required. In addition, a entrance road will have to be built onto the property. The project is expected to take four weeks to complete and the cost is estimated in the amount of $25,500.00. Claimant does not have an insurance policy that provides coverage for this incident.
Two of claimant’s neighbors, Mr. Ramey and Mr. Gibson described the measures taken by respondent in an attempt to remedy the problem of the water on the road. Mr. Ramey testified that respondent installed a twelve-inch plastic drain pipe at an angle in a curve in the road which was above the lower part of the road. Mr. Gibson testified that an eighteen inch culvert was installed across the road from claimant’s bam, but it was above the water and water stood in the ditch because there was no way for it to flow out of the culvert. Additionally, Mr. Gibson testified that he had observed three to four landslides in the area in question.
According to claimant’s expert in civil engineering and causation of landslides, Craig Alan Lyle, the primary cause of the landslide was the improper drainage along the ditch line which resulted in ponding of water which caused the soil beneath the road to lose shearing strength. It was his opinion that the digging of the footer for the bam foundation eleven years prior to the slip did not bring about *143 the eventual slip. After an inspection of claimant’s property on September 26, 1998, Mr. Lyle observed that the drain installed by respondent was ineffective and clogged with leaves. According to Mr. Lyle, water flow could not be maintained through the culverts because it only had a slight slope. Therefore, the water does not drain from the area but rather it percolates into the soil. Mr. Lyle explained that when water infiltrated and saturated the ground, which consists of clay soil in large part, the ground experienced a reduction in shearing strength. The saturated soil was reduced to the point where it would no longer stand at its previous slope. Thus, the landslide made a slow progression toward claimant’s bam to achieve stability. Mr. Lyle based his opinion on weather information obtained from the Huntington Sewage Treatment Plant; the Huntington Airport; and the Hogset-Gallipolis Dam that revealed that the rainfall measurements for November 28, 1994, were below normal while the rainfall measurements for May and June ini995 were above normal. Before the ditch line construction in November 1994, Mr. Lyle is of the opinion that the bam actually placed weight on the downhill side of the property and created a stable position for the bam. However, Mr. Lyle acknowledged that other factors such as water, steepness of the slope, soil characteristics, and a scarp area that exposed a sandstone outcrop also could have affected this landslide. In addition, Mr. Lyle acknowledged that this landslide was typical of most landslides in West Virginia.
The position of respondent was that it was not negligent in the maintenance of the ditch line on County Route 7. County Route 7 is a fourth priority single lane road that transverses in a west-east direction. The area in question is one-tenth of a mile from the hard top portion of County Route 7. Since County Route 7 is a fourth priority road, it is graded by respondent on an annual basis and ditched every five years. Before the slip, the portion of road in question was high and water flowed toward claimant’s property. Respondent’s employees went to the site and installed a drain pipe above the slip. According to the Assistant Supervisor for Cabell County, Clarence F. Scarberry, on March 10, 1995, the pipe was installed in order to reroute the water around the bam into the creek from above where the bam sets. Sometime after March 6, 1995, then Maintenance Assistant in the Maintenance Division, James F. Roberts, made a recommendation t o t he District Two Office[3] for piling to be installed on County Route 7.
Respondent’s e xpert in g eotechnical e ngineering, D r. Ge orge A lan H all, first visited the site on June 28, 1999. He described the area of the bam as being in a full slip plane. The landslide area was identified as an area of “rotational failure,” *144 which he also referred to as a “slump.”[1] The slip part in question started to move first and the other part followed it immediately thereafter. These two occurrences are related. Dr. Hall asserted that the slip in question is part of an ancient landslide which developed hundreds of years ago. On June 28, 1999, Dr. Hall observed a mound of material on the hillside below the road, including a large boulder on the western side of the bam. According to Dr. Hall, the significance of the mound area and the meander in the stream is that at one time the stream flowed relatively straight across the valley; however, a large landslide developed in the hillside which pushed out into the valley and forced the stream to the other side. This situation led to a more stable slope for many years. From his personal observation, Dr. Hall was of the opinion that there was excavation in the area directly behind the b am which brought about the reactivation of the slide. This excavation cut away a stable portion of the once stable slope.
Dr. Hall further explained that the time discrepancy between the excavation for the bam in 1983 and the landslide in 1994-1995 is the result of weather conditions during the years 1980 to 1988 when the area experienced an extreme dry period that caused the clay soil to shrink. Then in 1989, the area experienced one of the wettest years on record. Thus, the excavation for the bam being at the bottom of the slip area precipitated the beginning of the landslide. In addition, Dr. Hall asserted that the pipe which had been installed due to the drop in the road prevented the water flowing in that area from flowing into the ditch, thus, it was unable to flow into the creek.
The Court has held that respondent has a duty to provide adequate drainage of surface water, and drainage devices must be maintained in a reasonable state of repair. Haught vs. Dept. of Highways, 13 Ct. Cl. 237 (1980). In claims of this nature, the Court will examine whether respondent negligently failed to protect a claimant’s property from foreseeable damage. Rogers vs. Div. of Highways, 21 Ct. Cl. 97 (1996).
In the instant claim, claimant has established that respondent maintained the ditch on County Route 7, in Cabell County, in a negligent manner. The Court is of the opinion that respondent set in motion the slip that occurred by digging a ditch on the north side of Route 7 and then allowing the ponding of water in the ditch. This brought about the beginning of the slip into the bam and claimant’s first complaints to respondent. Respondent failed to address the situation of the water ponding in the ditch as soon as it received notice of the problem. Rather, no action was taken until the road itself began to sink and traffic was not able to traverse the road. *145 Respondent attempted to maintain its road in the manner necessary, i.e., by placing slag in the slip on the road. As a result of the weight on the roadway from the slag, the slope adjacent to claimant’s bam moved toward and against the northeast comer of the bam until it actually caused damage to the foundation blocks and then the bam began to move from its foundation. The amount of slag placed on the roadway; the later attempt to drain the area with the plastic pipe; and, the grading done in the area were not sufficient to stop the slide which had been put in motion as a result of the water in the ditch and on the road. Respondent did not take permanent, remedial action to protect the claimant’s property from the effects of this slip until the fall of 1995 when the piling was installed to stop the slip completely. There have been no further problems from the slip since the piling was placed by respondent.
It appears to the Court that claimant has the option to move her bam or to effect the necessary repairs and leave it where it is now located. T he evidence certainly supports the contention that the slope is no longer moving because County Route 7 is stable. The Court has considered the damage estimates in evidence. The Court is not satisfied that moving the bam to a new location is necessary; therefore, the Court has reduced the damages to reflect the approximate cost to repair the bam at its present location. The amount of $7,500.00 appears to the Court to be fair and reasonable for claimant to be able to replace the foundation blocks and place the bam back on its foundation.
In accordance with the findings of fact and conclusions of law stated herein above, the Court is of the opinion to make an award to the claimant in the amount of $7,500.00.
Award of $7,500.00.

 According to Design Technician, James F. Roberts, “slag” is a cheap, waste by-product from steel mills that is used as an aggregate to repair roads maintained by respondent.

 According to Administrative Assistant for the Operations Division, Chirstopher Kyle Sowards, “pilings” are steel posts, beams or wooden sticks placed into pre-drilled holes in the ground which are embedded into rock.

 Decisions regarding the installations of pilings are made based on severity of the problem and available funding for the project.

 “Geotechnical engineering,” also known as “soils and foundations engineering” is the use of earth materials either for foundation, for structures, or to construct a structure itself.